Marlin D. Sphatt, Plaintiff-Appellee, v. Michael J. Tulley and Joseph C. Tulley, Defendants-Appellants.

Gen. No. 48,750.

First District, Second Division.

December 4, 1962.

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellants.

Trafelet & Caldwell, of Chicago, for appellee.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court:

This is an appeal from a judgment in the amount of $110,000 in favor of the plaintiff for injuries sustained by him as the result of an automobile accident which occurred on the North Tri-State Tollway on August 11, 1960. On that night plaintiff, with his wife and two daughters, was driving in a northerly direction in his 1941 Plymouth automobile with a two-wheel trailer attached. Shortly after passing the O'Hare Oasis, plaintiff stopped at the side of the road to check the trailer hitch and the taillights and to determine why the trailer had been riding "bumpy" for a number of miles. While he was standing between the trailer and the rear bumper of his car, checking the trailer hitch,

the defendants' car collided with the rear of the plaintiff's trailer and the resulting impact crushed the plaintiff between the trailer and the car. He suffered fractured ribs, a cranial injury, multiple lacerations, a partial collapse of one lung, and multiple fractures of both legs which resulted in the surgical amputation of his right leg.

At the time of the collision the defendants were entering the Tollway from the Oasis where they had stopped to purchase gasoline and refreshments. The evidence is conflicting as to whether the plaintiff parked in the emergency lane of the Tollway or if he had stopped his vehicles wholly or in part on the lane used for entering the Tollway from the Oasis. The jury resolved that question of fact in favor of the plaintiff and rendered the verdict from which the present judgment is appealed.

In urging us to reverse the judgment of the Superior Court, the defendant has alleged that the trial court committed eight distinct reversible errors, each of which will be considered in the succeeding paragraphs of this opinion.

 The defendants first maintain that plaintiff's instruction No. 17 should not have been submitted to the jury. This instruction embodied, in part, Ill Rev Stats 1961, c 95½, § 146, and was submitted in the following language:

"The court instructs the jury that at the time and place of the collision there was in force a statute of the State of Illinois which reads as follows:

" '146. par 49. General speed restrictions. (a) No person shall drive any vehicle upon any public highway of this State at a speed which (1) is greater than is reasonable and proper with regard to traffic conditions and the use of the highway, or endangers the safety of any person or property; or (2) is greater than the applicable

maximum speed limit established by this section or by a regulation or ordinance made pursuant to the provisions of this Article. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions; and speed shall be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with the duty of all persons to use due care. . . .' "

■ Defendants' criticism of plaintiff's instruction No. 17 sounds in the proposition that Section 49 of the Motor Vehicle Act (Ill Rev Stats 1961, c 95½, § 146) is expressly rendered inapplicable to the Tollway by virtue of Section 49.02 of the Motor Vehicle Act. Section 49.02 empowers the Illinois State Toll Highway Commission to establish a maximum speed limit different than that established in Section 49 and provides: "A limit so determined and declared becomes effective, *and suspends the application of the limit* prescribed in Section 49 of this Act. . . ." The effect of Section 49.02 is merely to suspend the speed limit established in Section 49 and not to suspend the application of the Section in its entirety.

Plaintiff's instruction No. 17 informs the jury that in accordance with defendants' duty to use due care, it was incumbent upon them to reduce their speed because of, inter alia, the existence of special hazards "with respect to pedestrians or other traffic . . . ." This is a correct statement of the law and we find no reversible error in the instruction as given. We do not

find that the surplusage relating to the duty to use due care when crossing an intersection, when approaching and going around a curve, when approaching a hill crest or when traveling upon any narrow or winding roadway was either confusing to the jury or prejudicial to the defendant.

■ Defendants also contend that plaintiff's instruction No. 13 was improperly submitted to the jury. This instruction was submitted for the purpose of familiarizing the jury with the issues made by the pleadings and was drafted pursuant to IPI 20.01 which provides that the allegations of the complaint and the denials of the defendant shall be "set forth in simple form without undue emphasis or repetition. . ." and concludes with the comment that such an instruction "must meet the standards of Signa v. Alluri, 351 Ill App 11 . . . ."

Signa v. Alluri, supra, was a case in which the giving of an instruction summarizing the pleadings was held to be prejudicial error because it was prolix, it unduly emphasized plaintiff's charges of liability and it did not even summarize the denials of the defendant. The objectionable instruction in that case was nearly 800 words long and consumed nearly three printed pages of abstract. The allegations concerning "willful and wanton misconduct" alone consisted of nearly 500 words requiring two pages of abstract and the instruction was drafted in such manner that it appeared that the trial court in reading the instruction to the jury was arguing the case of the party who had prepared the instruction.

In the case at bar, the claims of the plaintiff, as well as the denials of the defendant, were set forth clearly and concisely. The jury was adequately instructed on what the plaintiff claimed had happened and on what the plaintiff claimed the duties of the defendant had been. Defendants' primary quarrel with the instruction in question is merely that the phrase "de-

235

fendants negligently and carelessly" was repeated six times in the summary of the claims of the plaintiff. This, in and of itself, is insufficient to render the instruction improper.

We do not believe that there was error in the giving of either of the above mentioned instructions. However, assuming but not admitting that there was some error, it was at most harmless and not prejudicial. As stated in Kavanaugh v. Washburn, 320 Ill App 250, 50 NE2d 761 and reiterated in the recent case of Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205: "Modern tendency favors a liberal application of the harmless error doctrine to instructions when it appears the rights of the complaining party have in no way been prejudiced." We also observed in Jepsen v. Sprout & Davis, 330 Ill App 448, 71 NE2d 542: "The trend of judicial opinion reveals a reluctance to reverse cases on the ground of technical errors in instructions; hence, courts have reiterated that the instructions will be considered as a whole, and where the jury has not been misled, and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed grounds for reversal."

We find that the instructions in the case at bar, taken as a whole, adequately present the issues and the applicable law. We find no reversible error therein.

Defendants also contend that two of their proposed instructions were erroneously withheld from the jury. The first of these, defendants' proposed instruction No. 21, was submitted to the trial court in the following manner.

"The jury is instructed that there was in full force and effect on the date of the occurrence in question the following law and regulation governing the tollway in question which provided as follows:

236

" 'No person shall drive any vehicle upon the Tollway at such a slow speed as to impede or block the normal and reasonable movement of traffic or at a speed of less than 40 miles per hour.'

"The jury is further instructed that you should consider the minimum speed requirement in determining what speed was reasonable and proper at the time and place in question."

■ This instruction as proposed could only confuse the jury because it conveys the impression that simply because there was a minimum speed limit imposed on drivers using the Tollway, such drivers had an unqualified duty to drive at least 40 miles per hour regardless of weather or traffic conditions, etc. This instruction does not state the law.

The statute partially embodied in this proposed instruction is Supplement 3(3)(b) of the Rules and Regulations of the Illinois State Toll Highway Commission. However, defendants have conveniently omitted the latter portion of this statute which suspends the application of the 40 miles per hour minimum limit "on service areas, toll plazas and ramps" and "where a reduced speed is necessary for the safe operation of a vehicle or in compliance with law." In the case at bar, defendants were emerging onto the Tollway from a ramp near the end of which was situated a parked automobile and trailer. Under these circumstances, a reduced speed was warranted and defendants' proposed instruction No. 21 was both unnecessary and confusing.

■ The other proposed instruction which the defendants claim was wrongfully refused consisted of three paragraphs, the first two of which were submitted to the jury in toto in instruction No. 14.

The final paragraph concerned the issue of contributory negligence, which was expressly defined for the jury in instruction No. 8 and adequately presented to

237

the jury in instruction Nos. 4 and 5. There is no error in refusing to give an instruction, the issues in which have been adequately covered by other instructions. Lawler v. Pepper Const. Co., 33 Ill App2d 188, 178 NE 2d 687, Cardona v. Toczydlowski, 35 Ill App2d 11, 180 NE2d 709.

▮ Defendants further contend that the trial court committed reversible error in refusing to submit to the jury the following special interrogatory: "Did the impact between plaintiff's trailer and defendants' automobile occur in the merging lane?"

The authority relied on by the defendants is embodied in Ill Rev Stats 1961, c 110, § 65:

> "The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law."

The categorical language of this statute has been limited in its application by Hulke v. International Mfg. Co., 14 Ill App2d 5, 51, 142 NE2d 717, in the following language:

> "A special interrogatory is not proper unless it relates to one of the ultimate facts upon which the rights of the parties directly depend and unless the answer responsive thereto would be inconsistent with some general verdict which might be returned upon the issues in the case. *Interrogatories which ask for a special finding as to evidentiary facts are never proper, even though ultimate facts may be deduced therefrom by reason or argument.*" (Citations omitted.)

238

Because the proposed interrogatory in the case at bar clearly sought to establish an evidentiary as opposed to an ultimate fact, it is our opinion that the trial court committed no error in refusing to submit it to the jury.

█ Defendants also contend that the trial court committed reversible error in refusing to permit defendants' counsel to cross-examine one Galberth, a police officer, who photographed the vehicles after the accident, with regard to their positions on or off the highway at the time at which he arrived upon the scene of the accident. This witness was summoned by plaintiff's counsel and introduced the photographs in question into evidence, identified them, and testified as to the nature of the camera with which he took the pictures. On cross-examination, defendants' counsel attempted to elicit from him information concerning the position of the vehicles at the time at which he arrived upon the scene of the accident as opposed to the time at which he took the photographs. These questions were objected to by plaintiff's counsel and the objections were sustained by the trial court.

As stated in 32 CJS Evidence § 548; Cross Examination—In General:

> "The extent to which cross examination shall go is a matter resting largely in the discretion of the trial court, which will not be controlled by an appellate court unless an abuse thereof is shown. . . ."

See also Rahn v. Krause, 209 Ill App 234; People v. Carter, 188 Ill App 22; Brennen v. Chicago & Carterville Coal Co., 241 Ill 610, 89 NE 756; Chicago City Ry. Co. v. Creech, 207 Ill 400, 69 NE 919; Hanchett v. Kimbark, 118 Ill 121, 7 NE 491. Furthermore, there is authority for the proposition that the scope of the cross-examination of an ordinary witness should be more limited than that of a witness who is a party in

239

interest. D. I. Felsenthal Co. v. Northern Assur. Co., 284 Ill 343, 120 NE 268. It would have been quite proper for defendants' counsel to cross-examine at great lengths with respect to the position of the vehicles at the time the photographs were taken. However, any testimony concerning the position of the vehicles at the time at which the witness arrived upon the scene of the accident would be completely extraneous and foreign to the subjects covered in the direct examination. Therefore, it appears that the trial court committed no breach of discretion in sustaining the objections of plaintiff's counsel.

Defendants also contend that one Luther, another witness, designedly injected insurance into the case before the jury. Luther was a tow truck operator who was summoned to the scene of the accident shortly after its occurrence and who subsequently twice visited the scene of the accident with the plaintiff's counsel. He was asked the question: "Well, were you asked some questions at 10:40 o'clock on March 28, 1961, at the Tri-State. Auto Service at Touhy and River?" His answer was: "I was asked if I would give a statement by two men who said they represented some insurance company. . . ." Subsequently, he was asked: "Please, didn't he tell you that he was from my office, the attorney representing the Tulleys?" His answer was: "The only thing I recall the man saying is he was from an insurance company."

Defendants maintain that the court committed reversible error by (a) denying defendants' motion to strike the unresponsive answers and (b) denying defendants' motion for a mistrial.

In the past, there existed a "hush, hush" policy in regard to the presence of an insurance carrier. McCormick on Evidence, p 357. However, in recent years, this policy has been in a state of transition. The practice of securing automobile liability protec-

240

tion has become almost universal and the presence of an insurance carrier no longer rings the prejudicial note which it did thirty years ago. We are not persuaded that the jury, in the case at bar, was influenced by passion or prejudice as a result of what appears to be an inadvertent and unresponsive remark of a completely disinterested witness. See Seyferlich v. Maxwell, 28 Ill App2d 469, 171 NE2d 806; Pinkerton v. Oak Park Nat. Bank, 16 Ill App2d 91, 147 NE2d 390; Reitz v. Yellow Cab Co., 248 Ill App 287; Hoffman v. Jenard, 334 Ill App 74, 78 NE2d 322.

■■■ Defendants' final contention is embodied in the following language: "Plaintiff had no reason to justify his stopping on the Tollway. There was no emergency justifying his stopping on the emergency strip. Hence, plaintiff has no cause of action because he did not prove that he was in the exercise of due care."

■■■ The issue of due care and lack of contributory negligence was apparently fully considered by the jury and resolved in favor of the plaintiff. We need scarcely mention that contributory negligence on the part of a plaintiff is a matter of fact for the jury to determine unless the question has become one of law, in that all reasonable minds would reach the conclusion that there was contributory negligence. Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205; Thomas v. Buchanan, 357 Ill 270, 192 NE 215; Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 125 NE2d 47. In view of the conflicting evidence in the case at bar, we are unwilling to make any such finding.

We find no reversible error in this case. The judgment is therefore affirmed.

Affirmed.

BURKE and FRIEND, JJ., concur.