(No. 33624.—

BETTY JANE KRUPP, Appellant, *vs.* CHICAGO TRANSIT AUTHORITY, Appellee.

*Opinion filed January 19, 1956—Rehearing denied March 19, 1956.*

LICASTRO & WISOWATY, (PETER FITZPATRICK, ALBERT E. JENNER, JR., and JOHN A. DOYLE, all of Chicago,) for appellant.

THOMAS C. STRACHAN, JR., WERNER W. SCHROEDER, and JAMES E. HASTINGS, all of Chicago, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The circuit court of Cook County held the defendant, Chicago Transit Authority, in contempt for its refusal to comply with an order directing it to answer certain interrogatories before trial, and imposed a fine of $100 as punishment. The Appellate Court reversed the judgment and we allowed leave to appeal because the case presents an important question of practice.

Plaintiff, Betty Jane Krupp, sued the Chicago Transit Authority to recover damages for personal injuries alleged to have been caused by the defendant's negligence in operating one of its street cars. The defendant answered, denying negligence and alleging contributory negligence. Plaintiff then submitted eleven written interrogatories of which defendant answered nine but refused to answer the following two: No. 10: "What are the names and addresses of all witnesses in possession of the defendant who were occurrence witnesses to plaintiff's injury as alleged in plaintiff's complaint." No. 11: "What are the names and addresses of all persons in possession of the defendant who witnessed plaintiff's injured condition subsequent to the accident until she was removed from defendant's streetcar."

Because the parties have disagreed as to the meaning of these interrogatories, it is important to determine at the outset just what information was sought. The defendant refers to the interrogatories in question as calling for "the names of the other party's witnesses," and the Appellate Court in its opinion adopted this interpretation. We think it is incorrect. While interrogatory No. 10 refers to "witnesses," and interrogatory No. 11 to persons who "witnessed," neither inquiry seeks the names of those persons whom the defendant intends to call as witnesses at the trial of the case. Interrogatory No. 10 requests the names of "occurrence witnesses" and interrogatory No. 11 the names of "persons * * * who witnessed plaintiff's

injured condition * * *." Fairly read, the interrogatories use the term "witness" in the primary sense of those who have personal knowledge of the event and not in the technical sense of those who are to be called to testify at the trial. The distinction is that which was drawn by this court in drafting the present Rule 19—4. (Compare Ill. Rev. Stat. 1955, chap. 110, par. 58, with par. 101.19—4.) Questions which might arise if there was an attempt to obtain by discovery the "work product of the lawyer" (cf. *Hickman* v. *Taylor*, 329 U.S. 495,) are therefore not involved.

The defendant first justifies its refusal to answer on the ground that there is no provision in the Civil Practice Act or in the Rules of Court which specifically authorizes these interrogatories. It contends, therefore, that the discovery sought was not authorized by statute or rule. It argues that the limitations which historically governed the allowance of discovery in equity are controlling in the absence of a specific provision to the contrary like that contained in Rule 26 of the Federal Rules of Civil Procedure, which provides for discovery by interrogatories of the "identity and location of persons having knowledge of relevant facts." 28 U.S.C.A. Rule 26(b).

Section 58 of the Civil Practice Act of 1933 as originally enacted contained two paragraphs. (Smith-Hurd Stat. 1933, chap. 110, par. 182.) The first paragraph dealt with the discovery formerly available in equity by bill for discovery or by interrogatories in a bill for relief. As to that kind of discovery it did away with the requirement of a separate suit and of interrogatories in the bill, and it provided that discovery of that kind could thereafter be had by motion filed in the cause in which the matter sought to be discovered would be used. The second paragraph dealt with discovery not theretofore available. When these interrogatories were filed it read: "Discovery of documents which are or have been in the possession of any other party

to the action may be had, admissions as to any fact may be requested *and answers to written interrogatories may be required of any other party,* and the deposition of any other party or of any person may be taken at such times and under such terms and conditions as may be prescribed by rules." (Ill. Rev. Stat. 1953, chap. 110, par. 182.) The italicized clause was added by amendment in 1941.

In our opinion the scope of the discovery authorized by section 58(2) was not confined to that which was historically available in equity. The legislature treated separately the old discovery and the new. (See Smith-Hurd Ill. Ann. Stat., Historical and Practice Notes following chap. 110, par. 182.) Moreover, the discovery rules which the court adopted after the act became effective are almost identical with those which had been enacted by the General Assembly as a schedule of rules which formed a part of the original statute. (Ill. Rev. Stat. 1953, chap. 110, pars. 259.17-259.19.) In substance and in a host of particulars those rules went far beyond the limits of classical discovery in equity, and they show that there was no intention that the discovery contemplated should be restricted to those limits. It could hardly have been intended, we think, that when discovery by interrogatories addressed to the other party was authorized by the 1941 amendment to section 58(2), it was to be circumscribed by limitations not applicable to the other forms of discovery previously authorized by the same subsection.

We see no overriding significance in the fact that no rule relating to discovery by interrogatories was adopted by this court after the 1941 amendment. Discovery by deposition may affect persons other than the parties to the action, and so it was necessary that the mechanics of taking depositions be fixed by rule. For that reason, Rule 19 was adopted. (Ill. Rev. Stat. 1953, chap. 110, par. 259.19.) Discovery by written interrogatories involves only the parties; its mechanics can readily be regulated by *ad hoc* orders

or by local rule of court, and so no provision comparable to Rule 19 was necessary. The interrogatories in this case were submitted and answered in accordance with the applicable rule of the circuit court of Cook County. With respect to depositions, Rule 19 contained no provision indicating specific matters that might or might not be inquired into. No such provision was necessary. Similarly, none was necessary when permissible discovery was broadened to include discovery by interrogatories by the amendment of section 58(2) in 1941.

It is true, of course, that there would be no question of the propriety of these interrogatories if they were authorized by a specific provision of statute or rule. But it does not follow that they are improper in the absence of a specific provision. By its enactment of section 58(2) the General Assembly showed its purpose to broaden substantially the scope of available discovery. It acted in response to prevailing dissatisfaction with procedural doctrines which had exalted the role of a trial as a battle of wits and subordinated its function as a means of ascertaining the truth. The doctrines which thus unduly emphasized the adversary quality of litigation originated in judicial decisions, some of which, indeed, are pressed upon us by the defendant and were relied upon by the Appellate Court. The hostile attitude toward discovery which sired those decisions was rejected by the General Assembly in the Civil Practice Act. "Discovery before trial" presupposes a range of relevance and materiality which includes not only what is admissible at the trial, but also that which leads to what is admissible at the trial. We need not now fix ultimate boundaries. It is enough for this case that the names of those persons who have first hand knowledge of the occurrence which gave rise to the action are unquestionably relevant and material.

The defendant also argues that the information sought is privileged because obtained in preparation for trial. The

claim of privilege is based upon the assertion that "Insofar as the names or addresses of such witnesses may be in any memorandum, report or document, such memorandum, report or document was prepared by the defendant or its agents or attorneys for trial * * *." The privilege thus sought to be asserted appears to be that expressed in Rule 17 with respect to "memoranda, reports, or documents prepared by or for either party in preparation for trial." (Ill. Rev. Stat. 1953, chap. 110, par. 259.17.) But in this case it is unnecessary to consider the source of the asserted privilege or its precise scope. For one who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege. "His mere assertion that the matter is confidential and privileged will not suffice." (*Robertson v. Commonwealth,* 181 Va. 520, 540, 25 S.E. 2d 352, 360; Ann. Cas. 1913A, p. 9; 58 Am. Jur. (Witnesses), sec. 370.) Here there was no indication of the circumstances under which the report, if there was one, came into existence. And in any event the plaintiff did not in this case seek to examine any report, but rather to ascertain the identity of the occurrence witnesses known to the other party.

Defendant also asserts a statutory privilege based upon section 23 of the Metropolitan Transit Authority Act which provides: "All ordinances, resolutions and all proceedings of the Authority and all documents and records in its possession shall be public records, and open to public inspection, except such documents and records as shall be kept or prepared by the Board for use in negotiations, action or proceedings to which the Authority is a party." (Ill. Rev. Stat. 1955, chap. 111⅔, par. 323.) We think that the exception contained in this provision does not create a special privilege for the Authority. Its purpose was not to place the Authority upon a different plane than other litigants with respect to documents and records prepared for

use in negotiations or on a trial, but rather to insure that the provision for public inspection of its records would not operate to place it on a different plane.

The judgment of the Appellate Court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate Court reversed; circuit court affirmed.*