**UNITED STATES ex rel. Norman BOSEK, Petitioner,**

v.

**Howard PETERS, III, et al., Respondents.**

**No. 92 C 1983.**

United States District Court, N.D. Illinois, E.D.

Nov. 3, 1993.

George Patrick Lynch, George P. Lynch, Ltd., Downers Grove, IL, M. Jacqueline Walther, Kielian & Walther, Chicago, IL, for petitioner.

Terence Madsen, Illinois Attorney General's Office, Chicago, IL, for respondents.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Now before the court is Magistrate Judge Gottschall's Report and Recommendation ("Report") regarding the petitioner's petition for a writ of habeas corpus. The Magistrate Judge recommended that the court deny the petition for a writ of habeas corpus, concluding that the petitioner defaulted his claims for failing to raise them in the state courts; that the petitioner did not show that he received ineffective assistance of counsel at trial; that the petitioner did not show that constitutional violations led to the conviction of an innocent person; and that the evidence presented at trial was sufficient to support a finding of guilt beyond a reasonable doubt. For the reasons set forth below, this court accepts the recommendation of the Magistrate Judge and denies the petition.

## I. FACTS

The facts are those set out in the Report and in the opinion of the appellate court on direct review, *People v. Bosek,* 210 Ill.App.3d 573, 576–593, 155 Ill.Dec. 370, 372–383, 569 N.E.2d 551, 553–564, *appeal denied,* 141 Ill.2d 546, 162 Ill.Dec. 495, 580 N.E.2d 121 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1180, 117 L.Ed.2d 424 (1992), and will not be fully set forth here. Some facts, however, warrant mention in this opinion.

On the afternoon of November 21, 1988, the petitioner shot and killed his wife's lover at the Pratt Wayne Woods forest preserve. The petitioner admitted to shooting the victim, Lucien Gilbert, after he found his wife sitting in Gilbert's car with Gilbert. However, the petitioner claimed that he shot in self-defense, believing that the victim was about to fire a semi-automatic AKS–47 assault rifle at him. One witness to the killing testified at trial that she saw the petitioner pointing his gun at the victim and then heard the shots fired from that gun. Apparently, no witness saw whether the victim pointed a weapon at the petitioner. However, several witnesses saw the victim, before he was shot, leaning into the trunk of his car, which at the time of the incident is where he kept the AKS–47 as well as a .357 magnum revolver. Several witnesses also testified that they saw the AKS–47 lying across the victim's legs after he had been shot.

At trial, the State's theory was that the petitioner shot Gilbert as Gilbert stood facing the open hatchback of his car, with his back to the petitioner. After Gilbert fell to the ground, partially paralyzed by the petitioner's first shot, the petitioner then fired two more shots into Gilbert's heart, killing him.

The petitioner, on the other hand, testified that Gilbert had picked up the AKS–47 and was standing erect when the petitioner shot him, and that the petitioner shot Gilbert only after he saw Gilbert appear to prepare to fire the AKS–47. The petitioner said that he fired the second and third shots after he saw Gilbert's hand move towards the trigger of the AKS–47; he believed that Gilbert was about to kill him.

Each side presented extensive character evidence at trial to show that either the petitioner or the victim was the aggressor. The evidence showed that Gilbert had threatened the petitioner and his son in the past; in fact, only days before the shooting the petitioner's son had received a threatening letter from Gilbert. The evidence also showed that Gilbert was known to carry weapons, such as a hunting knife, a .357 revolver, and the AKS–47, all of which he had brought to the petitioner's home at various times; that his nickname at the security

company at which he had been employed was "Rambo;" and that he had been fired from his security job for using unauthorized firearms and reporting to duty with alcohol on his breath.

Evidence also indicated that the petitioner had struck his wife and had been abusive to his children in the past. His wife testified that after she brought home flowers Gilbert had given her for her birthday, the petitioner threw the flowers all over the driveway and broke the banister and threw it into the foyer. She testified that the petitioner then cut off her transportation and communication by fixing her car and the phones in the house so that they would not work.

## II. *PROCEDURAL HISTORY*

The petitioner was charged with first degree murder. After a jury trial he was found guilty of second degree murder, and was sentenced to six years' imprisonment in the Illinois Department of Corrections. The petitioner appealed this conviction to the Illinois Appellate Court, raising five issues. First, the petitioner argued that he was deprived of his rights to due process when the trial court failed to instruct the jury as to the presumption of innocence and the State's burden of proof beyond a reasonable doubt on second degree murder. *Bosek*, 210 Ill. App.3d at 593, 155 Ill.Dec. at 383, 569 N.E.2d at 564. The appellate court rejected this contention. It noted that the petitioner had failed to object at trial to the omission of which he was complaining, and that the failure to object at trial to an asserted error in jury instructions waived the question on appeal. *Bosek*, 210 Ill.App.3d at 594, 155 Ill. Dec. at 383, 569 N.E.2d at 564 (citing *People v. Huckstead*, 91 Ill.2d 536, 543, 65 Ill.Dec. 232, 235, 440 N.E.2d 1248, 1251 (1982)). The petitioner argued that he had preserved the error by raising it in his post-trial motion. However, the appellate court stated that to be preserved, error must be objected to at trial *and* raised in a post-trial motion. *Bosek*, 210 Ill.App.3d at 594, 155 Ill.Dec. at 383–84, 569 N.E.2d at 564–65 (citing *People v. Enoch*, 122 Ill.2d 176, 186, 119 Ill.Dec. 265, 271, 522 N.E.2d 1124, 1130 (1988)). Although this waiver rule would not apply if

plain error had occurred, the court found that plain error had not occurred because the jury was properly instructed. Accordingly, the court concluded that the petitioner had waived this issue for appeal. *Bosek*, 210 Ill.App.3d at 594–595, 155 Ill.Dec. at 384–85, 569 N.E.2d at 565–66.

Secondly, the petitioner argued that the evidence at trial proved beyond a reasonable doubt that he acted in self-defense when he killed Lucien Gilbert. *Bosek*, 210 Ill.App.3d at 595, 155 Ill.Dec. at 385, 569 N.E.2d at 566. The appellate court disagreed. The court stated that it need consider only whether the petitioner's belief was unreasonable. Noting that while the petitioner's version of the shooting supported his theory of self-defense, the State's version negated that theory, the court found that the jury properly had concluded that the petitioner's belief that he needed to shoot Gilbert in self-defense was unreasonable. The court found no basis for disturbing the jury's rejection of the petitioner's theory of self-defense. *Bosek*, 210 Ill. App.3d at 595–596, 155 Ill.Dec. at 385, 569 N.E.2d at 566.

Thirdly, the petitioner argued that the trial court erred in rejecting his requested instruction to the jury that it could consider evidence of the victim's violent and aggressive behavior. *Bosek*, 210 Ill.App.3d at 597, 155 Ill.Dec. at 386, 569 N.E.2d at 567. The court rejected this argument, agreeing with the trial court that the requested non-Illinois Pattern Jury Instruction unduly singled out one aspect of the case. The court found that the jury in this case was accurately instructed as to the justifiable use of force by the petitioner and was properly instructed that it had to find beyond a reasonable doubt that the petitioner was not justified in using the force he had used in order to find him guilty of first degree murder. The court noted that the jury must have considered the ample evidence of the victim's aggressiveness and threatening nature since it found the petitioner guilty of second degree murder rather than first degree murder. *Bosek*, 210 Ill. App.3d at 597–598, 155 Ill.Dec. at 386, 569 N.E.2d at 567.

Fourthly, the petitioner argued that the trial court erred in admitting evidence of

uncharged crimes and alleged violent acts committed by him against his family. *Bosek,* 210 Ill.App.3d at 598, 155 Ill.Dec. at 386, 569 N.E.2d at 567. The court rejected his contention. It noted that the petitioner himself raised the subject of medical records that showed that his son had to receive medical attention as a result of a fight with the petitioner; the State then cross-examined him on this issue. The court stated that when an accused has interjected an issue into a case, he cannot then argue that it was error for the State to bring the issue to tne jury's attention. *Bosek,* 210 Ill.App.3d at 599, 155 Ill.Dec. at 387, 569 N.E.2d at 568 (citing *People v. Ortiz,* 155 Ill.App.3d 786, 794, 108 Ill.Dec. 329, 335, 508 N.E.2d 490, 496 (1987)). The court also found that the petitioner failed to object to the State's characterization of him, in its closing argument, as an individual who physically and emotionally abused his wife. It thus concluded that he waived any objection to this issue on appeal. *Bosek,* 210 Ill.App.3d at 599, 155 Ill.Dec. at 387, 569 N.E.2d at 568.

Lastly, the petitioner contended that he received ineffective assistance of counsel, which resulted in his conviction. *Id.* He argued that his defense counsel had erred in failing to move to suppress the petitioner's statements to the deputy at the scene of the killing; in failing to object to testimony about the petitioner's past violent conduct; in failing to object to hearsay testimony and in making only 25 objections during a weeklong trial; and in failing to have certain letters admitted into evidence. The court found that none of these alleged errors actually was error, and therefore held that defense counsel's assistance was not ineffective. Accordingly, the appellate court affirmed the petitioner's conviction. *Bosek,* 210 Ill.App.3d at 599–601, 155 Ill.Dec. at 387–89, 569 N.E.2d at 568–70.

The petitioner petitioned for leave to appeal to the Illinois Supreme Court, which denied his petition without opinion. *People v. Bosek,* 141 Ill.2d 546, 162 Ill.Dec. 495, 580 N.E.2d 121 (1991). The petitioner then filed a petition for *certiorari* in the United States Supreme Court, which also denied his petition without opinion. *Bosek v. Illinois,* —— U.S. ——, 112 S.Ct. 1180, 117 L.Ed.2d 424 (1992). The petitioner now has petitioned this court for a writ of habeas corpus.

The petitioner raises the following issues in this court:

(1) His federal constitutional rights to due process of law and trial by jury were violated when the trial court failed to instruct the jury as to the presumption of innocence and the requirement that the State prove the petitioner guilty beyond a reasonable doubt of second degree murder; (Petition, pp. 4–5.)

(2) His conviction, despite the State's failure to prove him guilty beyond a reasonable doubt, denied the petitioner his federal constitutional right to due process; (Petition, pp. 5–6.)

(3) His rights to due process and a fair trial were violated when the court refused the petitioner's requested instruction that the jury may consider evidence of the victim's aggressive and violent character, along with the other facts and circumstances, to show who was the aggressor; (Petition, pp. 6–7.)

(4) His right to due process was violated by the State's presentation into evidence of alleged prior violent conduct of the petitioner in allegedly beating his son seven years earlier; (Petition, p. 8.)

(5) His rights to due process and effective assistance of counsel were violated by the conduct of his attorney during trial. (Petition, p. 8)

Magistrate Judge Gottschall recommended that the court deny the petition for a writ of habeas corpus. This court will review the Report *de novo* pursuant to 28 U.S.C. § 636(b).

## III. *DISCUSSION*

The State argues that four of the petitioner's five claims of error in his petition are procedurally defaulted from consideration on federal habeas review. Only the claim that the State failed to prove the petitioner guilty beyond a reasonable doubt is not challenged on the basis of procedural default. The State instead argues that the claim is without mer-

it. This court will first address that claim on its merits.

## A. *Failure to prove guilt beyond a reasonable doubt*

■ The petitioner claims that his right to due process was violated because the State failed to prove him guilty of second degree murder beyond a reasonable doubt. The State counters that ample evidence existed upon which the petitioner could have been found guilty beyond a reasonable doubt. This court agrees with the Magistrate Judge that, on the record in this case, substantial evidence exists to support a finding of guilt beyond a reasonable doubt of second degree murder. This court thus adopts in whole the Magistrate Judge's reasoning and conclusion that the State did not fail to prove the petitioner guilty of second degree murder beyond a reasonable doubt. We now address the petitioner's remaining claims.

## B. *Procedural default*

The State next argues that the petitioner has procedurally defaulted on four of his five claims by failing to object to the alleged error in state court; by failing to raise the issue on appeal to the state supreme court; or by failing to present the argument in constitutional terms to the state court. The petitioner, in turn, presents various arguments that he did not procedurally default in the state courts, or that any procedural defaults fall under certain exceptions and thus do not prevent his claims from being considered by the federal court. The Magistrate Judge agreed with the State that the petitioner defaulted on the four claims. While this court agrees with the Magistrate Judge with respect to two of the claims, we feel it necessary to address two of the claims on their merits.

■ Before a federal court will hear a petition for habeas corpus, a state prisoner generally must exhaust all available state judicial remedies. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The exhaustion doctrine allows the state to have the initial opportunity to correct alleged violations of its prisoners' federal rights. *Id.* However, the exhaustion of remedies requirement refers only to the remedies still available to the petitioner at the time the federal petition is filed. *U.S. ex rel. Johnson v. McGinnis,* 734 F.2d 1193, 1196 (7th Cir.1984). Thus, a habeas petitioner who has defaulted his federal claims in state court in effect has exhausted his state court remedies, since he no longer can present those claims to the state courts. *Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). In the present case, the State concedes that the petitioner has exhausted his state remedies. *See* Answer to Petition for Habeas Corpus, at 2.

■ To prevent habeas petitioners from avoiding the exhaustion requirement by deliberately defaulting their claims in state court, however, federal courts will not consider a petitioner's claim that has been procedurally defaulted under state law. *See Coleman,* —— U.S. at ——, 111 S.Ct. at 2555. Procedural default can happen in many ways and at different stages of the state court proceedings. *U.S. ex rel. Gladney v. Peters,* 790 F.Supp. 1364, 1368–69 (N.D.Ill.1992). For example, in states that maintain a contemporaneous objection rule, a petitioner's failure to object at trial to disputed jury instructions will ordinarily prevent federal habeas review. *Gladney,* 790 F.Supp. at 1369. Additionally, a petitioner generally forfeits the right to raise an issue he failed to raise on direct appeal, *id.,* or on appeal to the state's highest court. *Nutall v. Greer,* 764 F.2d 462, 464, 465 (7th Cir.1985). Furthermore, a failure to present a constitutional claim on direct appeal operates as a procedural default and hence as a waiver of that claim. *U.S. ex rel. Brown v. Lane,* 685 F.Supp. 675, 678 (N.D.Ill.1988) (citing *U.S. ex rel. Duncan v. O'Leary,* 806 F.2d 1307, 1313 (7th Cir.1986)). The test of "presenting" a constitutional claim to the appellate court is whether it was "presented in such a way as to fairly alert the state court to any applicable constitutional grounds for the claim." *U.S. ex rel. Sullivan v. Fairman,* 731 F.2d 450, 453 (7th Cir.1984). With these principles in mind, we address the State's procedural default arguments.

### 1. *Failure to object at trial to an alleged error*

The State argues that the petitioner procedurally defaulted on his claim that he was deprived of his right to due process when the trial court failed to instruct the jury on the presumption of innocence and burden of proof on second degree murder because he failed to object at trial to the omission of these instructions. The petitioner concedes that he failed to object to this omission, but argues that he preserved the error by raising it in his post-trial motion. However, merely raising the error in a post-trial motion is insufficient. In Illinois, *both* a written post-trial motion *and* a trial objection are necessary to preserve an issue for review on appeal. *People v. Enoch,* 122 Ill.2d 176, 186, 119 Ill.Dec. 265, 271, 522 N.E.2d 1124, 1130 (1988). The failure to object to alleged errors at trial may waive the right for the errors to be considered on appeal. *People v. Carlson,* 79 Ill.2d 564, 576, 38 Ill.Dec. 809, 814, 404 N.E.2d 233, 238 (1980). The federal courts generally are bound by a state court's finding of procedural default under its own laws. *White v. Peters,* 990 F.2d 338, 340 (7th Cir.1993).

In the present case, the Illinois Appellate Court found that the petitioner had waived his challenge on appeal to the omitted jury instructions because he failed to object to them at trial. Although the petitioner argues that the appellate court actually reached the merits of his challenge under the "plain error" test, the appellate court merely discussed the merits in the context of its holding that the omitted instructions did not constitute plain error and thus that the jury instruction issue was waived.[1] *Bosek,* 210 Ill.App.3d at 594–95, 155 Ill.Dec. at 384–85, 569 N.E.2d at 565–66. This court is bound

by that determination. Accordingly, we agree with the Magistrate Judge that we cannot consider the jury instruction issue, unless the petitioner can show that his default falls under the "cause and prejudice" or "miscarriage of justice" exceptions to procedural default. These exceptions are addressed *infra.*

### 2. *Failure to alert the state court to the constitutional grounds of a claim raised on federal habeas corpus*

The State argues that the petitioner raises two claims on petition for habeas relief that he failed to address in constitutional terms on appeal to the state appellate court. If the State is correct, this court is barred from considering the claims unless the petitioner shows cause for and prejudice from the defaults or that a "miscarriage of justice" has occurred because of the alleged errors. This issue is addressed *infra.*

### a. *Refusal to give instructions regarding victim's violent and aggressive nature*

The petitioner argued on appeal that the trial court erred in rejecting his requested instruction to the jury that it could consider evidence of the victim's violent and aggressive behavior to show who was the aggressor. On petition for writ of habeas corpus, the petitioner revised this claim, arguing that his rights to due process and a fair trial were violated when the court refused his requested instruction. The substance of the petitioner's claim in this court is that the trial court's rejection of the instruction deprived the petitioner of presenting his theory of defense to the jury and was a fundamental miscarriage of justice.[2]

---

1. A reviewing court may consider "plain errors or defects affecting substantial rights" even though they were not brought to the attention of the trial court. *Carlson,* 79 Ill.2d at 576, 38 Ill.Dec. at 814, 404 N.E.2d at 238. Plain errors include those that deny the accused a fair and impartial trial. *Carlson,* 79 Ill.2d at 576–77, 38 Ill.Dec. at 814, 404 N.E.2d at 238 (citation omitted).

However, a court reaching the plain error exception to waiver must state clearly that it is reaching that analysis only as an alternative to waiver.

*Rose v. Lane,* 910 F.2d 400, 402 (7th Cir.1990). The Illinois Appellate Court in *Bosek,* in contrast, clearly stated that it was not reaching the plain error analysis. *Bosek,* 210 Ill.App.3d at 594, 595, 155 Ill.Dec. at 384, 385, 569 N.E.2d at 565, 566.

2. The "justifiable use of force" provisions in Illinois' Criminal Code require the person using the force to have a reasonable belief that he is in imminent danger of harm. The provisions also preclude a person who was the aggressor from claiming self-defense, unless that person had ex-

■ Petitioner argues that he presented the substance of his federal constitutional claim to the state courts. According to the petitioner, he argued in his brief to the Illinois Appellate Court that the refusal of the trial court to give his requested instruction "debilitated his right to present his defense" and in his Petition for leave to appeal to the Illinois Supreme Court that the refusal deprived him of a fair trial. The Magistrate Judge agreed with the State that the petitioner procedurally defaulted on this claim. However, since the petitioner's arguments to the state court should have fairly alerted the state court to the substance of his federal constitutional claims, this court will address his constitutional claim on the merits. *See Sullivan*, 731 F.2d at 454.

■ In a habeas corpus action where the petitioner alleges constitutional error based on the trial court's refusal to allow the defense's requested instruction, the reviewing court must determine whether the omission of the requested instruction so infected the entire trial that the resulting conviction violated due process. *U.S. ex rel. Stamps v. Hartigan*, 586 F.Supp. 1575, 1577 (N.D.Ill. 1984).

In the present case, this court cannot say that the omitted instruction "so infected the entire process" that the petitioner's conviction violated due process. The petitioner's counsel addressed the victim's violent and aggressive nature in his opening and closing arguments, and presented substantial evidence of the victim's violent and aggressive nature during the trial. As the Illinois Appellate Court noted, the fact that the jury considered the ample evidence of the victim's aggressive and threatening nature was reflected in the fact that the petitioner was found guilty of second degree murder rather than first degree murder. *Bosek*, 210 Ill. App.3d at 597, 155 Ill.Dec. at 386, 569 N.E.2d at 567. Accordingly, this court rejects, on

the merits, the petitioner's argument regarding the refused jury instructions.

### b. *Admission into evidence of prior violent conduct*

■ The petitioner argued on direct appeal that the trial court erred in admitting evidence of uncharged crimes and violent acts he allegedly committed against his family. The petitioner revised this claim on petition for habeas relief, arguing that his right to due process was violated by the State's presentation into evidence of the petitioner's alleged prior violent conduct in allegedly beating his son years earlier.

The petitioner did not present the substance of his constitutional claim to the state courts. He raised, and the appellate court addressed, his claim in the context of state evidentiary law. *Bosek*, 210 Ill.App.3d at 597–598, 155 Ill.Dec. at 386–87, 569 N.E.2d at 567–68. Consequently, this court agrees with the Magistrate Judge that we cannot address his constitutional claim absent a showing of "cause and prejudice" or "miscarriage of justice." *See infra.*[3]

### 3. *Failure to present a claim to the state supreme court*

The State argues that the petitioner raises two claims on petition for habeas relief that he failed to present those claims to this court without showing that the default is saved by one of the exceptions discussed *infra*.

■ A state prisoner waives habeas review of a claim not only by failing to present it to the lower court on direct appeal, but also by failing to seek leave to present it to the highest court after taking a direct appeal. *Nutall*, 764 F.2d at 465. Furthermore, if a state prisoner seeks leave to appeal to the highest court, but fails to include a claim raised on direct appeal in the petition for

---

hausted all reasonable means of escape other than use of force. *See* 720 ILCS 5/7–1 and 5/7–4 (formerly Ill.Rev.Stat. ch. 38, ¶¶ 7–1 and 7–4 (1987)). Thus, the instruction requested by the petitioner goes to his theory of defense in that it addresses the issue of whether his belief was reasonable and whether the victim was the aggressor.

3. In addition, the appellate court noted that the petitioner had failed to object to this testimony at trial, and that objection to it on appeal therefore was waived. *Bosek*, 155 Ill.Dec. at 387, 569 N.E.2d at 568. Accordingly, any challenge to this testimony on petition for habeas corpus also is waived.

leave to appeal, the prisoner similarly waives federal habeas review of the omitted claim. *U.S. ex rel. Peterson v. Chrans*, 735 F.Supp. 269, 270 (N.D.Ill.1990).

### a. Admission into evidence of prior violent conduct

■ The State first asserts that the petitioner waived his claim that his right to due process was violated by the State's presentation into evidence of the prior violent conduct of the petitioner. This court has held that the petitioner waived this argument by failing to present it in constitutional terms to the state appellate court and by failing to object at trial. *See supra.* In addition, this court agrees with the State that the petitioner failed to present it to the state supreme court; thus, the claim is waived on that alternate ground as well.

### b. Ineffective assistance of counsel

■ The State also contends that the petitioner waived his claim that his rights to due process and effective assistance of counsel were violated by the conduct of his attorney during trial. The Magistrate Judge found that the petitioner argued to the Illinois Supreme Court that trial counsel erred in failing to object to the instructions at trial, although that claim was not included under the heading of ineffective assistance of counsel. The Magistrate Judge decided that the issue deserved to be addressed because of the potential consequences of an instructional error, and because the substance of the claim of ineffective counsel was presented at all levels in the state court. Report, at p. 17. This court agrees. Further, the petitioner raises ineffective assistance of counsel not just as an independent claim, but as cause for his other procedural defaults. Thus, given the importance of this claim to the petitioner's habeas corpus action, this court will address the petitioner's claim of ineffective assistance of counsel on the merits.

■ A petitioner raising the claim of ineffective assistance of counsel on petition for habeas relief first must show that counsel's performance was deficient—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ...

by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In short, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. The petitioner then must show that the deficient performance prejudiced the defense—that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ When determining whether trial counsel's performance was defective, the reviewing court must give deference to counsel's decisions. A strong presumption exists that counsel's representation "falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. (citation omitted).

The petitioner argues that his trial attorney made numerous prejudicial errors. He claims (1) that his trial attorney failed to object to the State's instructions on the burden of proof and the presumption of innocence, or to tender appropriate instructions on these points; (2) that the attorney failed to object to the introduction of evidence concerning the petitioner's alleged abuse of his son; (3) that the attorney failed to have admitted into evidence letters that showed that the victim was highly aggressive and that the victim and the petitioner's wife were conniving and distorted individuals; (4) that the attorney erred in failing to move to suppress statements the petitioner made to a police officer while he was in custody, but before he was read his *Miranda* warnings; and (5) that the combined effect of these errors was enough to tip the verdict against the petitioner. This court finds that the first three of these alleged errors did not constitute deficient performance, and that the fourth, even if it constituted deficient performance, failed to prejudice the petitioner.

### c. Instructions on burden of proof and presumption of innocence

The petitioner contends that the jury was not instructed that the presumption of innocence applies to second degree murder and was not clearly advised about what standard to use to assess the reasonableness of the petitioner's belief that he was justified in killing Gilbert. He argues that a separate instruction on the presumption of innocence as to second degree murder and clear instructions on how to assess evidence of justification were required for a fair trial. The petitioner also argues that these instructions reduced the State's burden of proof, and thus violated his rights to due process and a jury trial. The petitioner claims that his trial counsel erred by failing to object to the instructions given or to tender appropriate instructions, and that the error undermines the reliability of the verdict.

This court adopts in whole the Magistrate Judge's reasoning and conclusion that the instructions accurately and sufficiently stated the law in Illinois and were not so ambiguous that they would have confused the jurors regarding the presumption of innocence and the burden of proof. *See* Report, pp. 17–29. Accordingly, petitioner's counsel cannot be said to have erred in failing to object to the instructions.

### d. Failure to object to the introduction of evidence about the petitioner's alleged abuse of his son

The petitioner argues that his trial counsel was ineffective for not objecting to the State's introduction of evidence of his alleged abuse of his son. However, the Illinois Appellate Court noted that it was the petitioner who first raised the subject of the petitioner's son's medical records on cross examination of petitioner's wife. On redirect examination by the State, the petitioner's wife testified that her son had received medical treatment after a fight with the petitioner. *Bosek,* 210 Ill.App.3d at 598, 155 Ill.Dec. at 387, 569 N.E.2d at 568. On direct examination and again on cross examination, the petitioner himself testified about the medical records and fight. *Bosek,* 210 Ill.App.3d at 598–599, 155 Ill.Dec. at 387, 569 N.E.2d at 568.

In Illinois, when an accused has interjected an issue into a case, he cannot then argue that it was error for the State to bring the issue to the jury's attention. *Bosek,* 210 Ill.App.3d at 599, 155 Ill.Dec. at 387, 569 N.E.2d at 568 (citing *People v. Ortiz,* 155 Ill.App.3d 786, 794, 108 Ill.Dec. 329, 335, 508 N.E.2d 490, 496 (1987)). As the appellate court found, the testimony brought out by the State was virtually identical to that given by the petitioner and therefore is admissible. The petitioner's trial counsel did not commit an error by failing to object to this admissible evidence.

### e. Failure to admit letters into evidence

The petitioner argues that his trial counsel erred by failing to have two letters, one written by his wife and the other written by Gilbert, sent to the jury for consideration during deliberations. The State argues that the petitioner's trial counsel wanted the letters admitted into evidence but that the trial court ruled against him. The petitioner counters that the judge did not rule against his counsel but that counsel acquiesced in the omission of the letters, or portions of them, from the jury's consideration.

However, the Illinois Appellate Court framed the petitioner's argument on appeal as that trial counsel erred by failing to have the letters admitted into evidence. *Bosek,* 210 Ill.App.3d at 601, 155 Ill.Dec. at 388, 569 N.E.2d at 569. According to that court, part of the petitioner's wife's letter was admitted, but when the State objected that portions of it contained sexual references that had no place in the trial, the petitioner's counsel indicated that he had no problem with not having these portions admitted. The trial court also refused to admit Gilbert's letter because of its sexual nature, although the trial court found the letter probative of Gilbert's deteriorating state of mind. *Id.*

The Illinois Appellate Court found that the trial court refused to admit Gilbert's letter after argument by the petitioner's trial counsel, and that the fact that the trial court ruled against the defense counsel was not

error on counsel's part. *Bosek,* 210 Ill. App.3d at 601, 155 Ill.Dec. at 389, 569 N.E.2d at 570. The appellate court found further that the trial court's refusal to admit the sexual portions of the petitioner's wife's letter was proper, and thus that no error occurred in the failure to admit the letter. *Id.*

This court agrees with the Illinois Appellate Court that the petitioner's counsel did not err in failing to have these letters admitted into evidence. Furthermore, even if the petitioner's characterization of his claim—that his counsel erred in failing to have the letters sent back to the jury—is accurate, that argument is meritless. Material not admitted into evidence clearly may not be sent to the jury room while the jury is deliberating. *Fedors v. O'Brien,* 39 Ill.App.2d 407, 411, 188 N.E.2d 739, 742 (1963).

### f. *Failure to move to suppress statements made to a sheriff's deputy prior to Miranda warnings*

█ The petitioner claims that his trial counsel erred by failing to move to suppress statements that the petitioner made while in police custody but prior to being given *Miranda* warnings. Shortly after the shooting, a sheriff's deputy arrived at the forest preserve to investigate the shooting. The deputy found the petitioner sitting in the back seat of a village police officer's squad car, and directed the petitioner to step out of the car, frisked him, and asked him if the shooting was an accident. The petitioner answered "no" and mumbled something else that the questioning officer did not hear. *Bosek,* 210 Ill.App.3d at 579–80, 155 Ill.Dec. at 374–75, 569 N.E.2d at 555–56. An officer walking by said he heard the petitioner add that he had come there intending to do something like this. *Bosek,* 210 Ill.App.3d at 581, 155 Ill.Dec. at 375, 569 N.E.2d at 556. The deputy then put the petitioner in the back seat of his squad car. The petitioner also told the deputy that the gun he had used to shoot Gilbert was in a compartment in the door of the petitioner's car. *Bosek,* 210 Ill. App.3d at 580, 155 Ill.Dec. at 375, 569 N.E.2d at 556. According to the deputy, the petitioner was in the deputy's custody while making these disclosures, but had not yet

been read his *Miranda* warnings. *Id.* See also *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

█ *Miranda* protects suspects from interrogation while in custody of the police. Statements volunteered by the suspect are not products of interrogation, and therefore are not covered by *Miranda's* protections. *See Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630. Since the petitioner volunteered his statement to the police officer about where his gun was located, that statement was not given in violation of *Miranda* and was correctly admitted into evidence. Thus, trial counsel did not err in not moving to suppress that statement.

However, the statements that the shooting was not an accident and that the petitioner had gone to the forest preserve with the intention of doing something like what he did were not volunteered by the petitioner, but were responses to questioning by the deputy while the petitioner was in custody. *See Bosek,* 155 Ill.Dec. at 374–75, 569 N.E.2d at 555–56. "The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). "Interrogation" refers to express questioning or any words or actions by the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Innis,* 446 U.S. at 300–301, 100 S.Ct. at 1689–90. Thus, it is possible that the statement by petitioner was received in violation of *Miranda.*

But, even assuming *arguendo* that these two statements were products of custodial interrogation and that counsel erred by not moving to suppress them, this court cannot say that the alleged error by trial counsel amounted to a Constitutional deprivation. The petitioner argues that the statement heard by the passing officer that the petitioner had intended to do something like this, suggests premeditation, which seriously contravenes the petitioner's defense that Gilbert was the aggressor, and that the petitioner acted in self-defense. However, the jury found the petitioner guilty of second degree

murder, which necessitates a finding that the petitioner believed that he was justified in using force against Gilbert. This verdict indicates that the admission of that statement did not affect the petitioner's defense.

In addition, as the Illinois Appellate Court noted, the admission of the petitioner's answer of "no" did not destroy his theory of self-defense. "Obviously if it was in self-defense, the shooting was not an accident." *Bosek,* 210 Ill.App.3d at 600, 155 Ill.Dec. at 388, 569 N.E.2d at 569. Lastly, substantial evidence beyond the admitted statements existed to support the jury's verdict. These factors considered, a reasonable probability does not exist that but for the admission of the statements, the result of the trial would have been different.

In sum, none of the errors that the petitioner claims his trial counsel made, nor the combined effect of them, indicates that trial counsel's representation of the petitioner was constitutionally defective. Consequently, this court rejects the petitioner's claim of ineffective assistance of counsel.

### C. *Overcoming procedural default*

The petitioner contends that this court should consider his claims despite his procedural defaults because he has overcome any defaults. However, this court agrees with the Magistrate Judge that the petitioner has not shown cause for or prejudice from his defaults, or that a miscarriage of justice resulted from the constitutional violations he claims occurred.

#### 1. *"Cause and prejudice"*

 A petitioner can be relieved from the effects of procedural default by showing cause for the default, as well as actual prejudice from it. *Wainwright v. Sykes,* 433 U.S. 72, 84, 87, 97 S.Ct. 2497, 2504, 2506, 53 L.Ed.2d 594 (1977); *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986). "Prejudice" means that a "reasonable probability" exists that if the petitioner had appealed or otherwise had not defaulted, he would have won. *See Belford v. United States,* 975 F.2d 310, 314 (7th Cir. 1992). To show "cause," a petitioner generally must show that some objective factor external to the defense impeded counsel's efforts to comply with a procedural rule or prevented counsel from constructing or raising a claim. *Carrier,* 477 U.S. at 488, 492, 106 S.Ct. at 2645, 2647. Under this definition, ineffective assistance of counsel constitutes cause for a procedural default that occurred as a result of counsel's constitutionally deficient performance. *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2645. A claim of ineffective assistance of counsel, however, must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. *Carrier,* 477 U.S. at 489, 106 S.Ct. at 2646.

This court has concluded that the petitioner procedurally defaulted on his claims that he was deprived of his right to due process when the trial court failed to instruct the jury on the presumption of innocence and burden of proof on second degree murder, and that his right to due process was violated by the State's presentation into evidence of his alleged prior violent conduct in beating his son years earlier. The petitioner claims that procedural default of these two claims was caused by his trial counsel's ineffective assistance of counsel. However, this court has found that the petitioner's counsel's performance was not constitutionally ineffective. Therefore, the petitioner has not shown cause for these defaults.

In the absence of a showing of cause, prejudice need not be determined. *See Mac-Dougall v. McCaughtry,* 951 F.2d 822, 825 (7th Cir.1992). However, our finding that trial counsel did not err also would support a lack of prejudice. That is, even if counsel had made the objections that the petitioner argues he should have made, the outcome of the case most likely would be no different, since the trial court most likely would have overruled the objections. Accordingly, the "cause and prejudice" exception to procedural default cannot save the petitioner's claims.

#### 2. *"Miscarriage of justice"*

 In the "extraordinary case" where a fundamental miscarriage of justice has resulted in an unjust incarceration, a federal court may grant a writ of habeas

corpus even in the absence of a showing of cause for the procedural default. *Carrier,* 477 U.S. at 495–96, 106 S.Ct. at 2649. In such a case, the petitioner must show that a constitutional violation probably has resulted in the conviction of an innocent person. *Id.*

This court now essentially has had the opportunity to address the merits of four of the petitioner's claims, two of which the petitioner procedurally defaulted but which were encompassed in his ineffective assistance of counsel argument. Given the conclusions that the petitioner's counsel was not ineffective and that petitioner was not deprived of his rights to due process and a fair trial when the trial court rejected his instruction regarding the victim's aggressive character, as well as that sufficient evidence was presented at trial to support the petitioner's conviction of second degree murder, this court cannot find that a fundamental miscarriage of justice has resulted in the conviction of an innocent person. For this reason, the petitioner has not overcome his procedural defaults, and this court cannot consider these defaulted claims.

## IV. *CONCLUSION*

For the reasons set forth above, the petitioner's petition for a writ of habeas corpus is denied.